(128 So. 286)

**STATE v. HENDON.**

No. 30413.

Feb. 3, 1930.

On Rehearing May 5, 1930.

Amos L. Ponder, Sr., of Amite, and John J. Jackson, of Hammond, for appellant.

Percy Saint, Atty. Gen., A. L. Ponder, Jr., Dist. Atty., of Amite, Thomas A. Warner, of Hammond, Ellis, Ellis & Ellis, of Amite, and E. R. Schowalter, Asst. Atty. Gen., for the State.

OVERTON, J.

Defendant was indicted on the charge of obtaining by a false pretense a carload of strawberries, valued at $1,282.50, from the Louisiana Strawberry Auction, Inc., with the intent to defraud. The false pretense alleged was that defendant represented to the auction company that he had money in the Citizens' National Bank of Hammond sufficient to cover the price of the strawberries, when, in fact, he did not have the money there. The jury found the accused guilty, and from the sentence imposed he prosecutes this appeal.

Defendant reserved a number of bills of exception during the trial, but relies on only four of them to obtain a reversal. Those, not relied on, are not discussed in defendant's brief, and were abandoned in oral argument, and therefore will not be considered here. The bills relied on are those designated in the record as D, E, F, and G.

It appears from the first of these bills that defendant offered in evidence a telegram, sent from Chicago by the Commerce Trust & Savings Bank to the Citizens' National Bank of Hammond, La., dated April 29, 1929, advising the latter that the former guaranteed payment of a draft, drawn by defendant on Gridley, Maxon & Co., for $2,549.62, the net proceeds of two cars of berries, described as N. P. (Northern Pacific) 1800 and I. C. (Illinois Central) 4641. This telegram was excluded by the court.

It appears from the bill designated as E that defendant offered in evidence a duplicate deposit slip, dated April 29, 1929, showing that on that date he deposited in the Citizens' National Bank of Hammond, La., checks or

drafts, amounting to $8,469.72, two of which were drafts on Gridley, Maxon & Co., aggregating, within five cents, the amount of the draft referred to in the foregoing telegram. This deposit slip was also excluded by the court.

It appears from the bill designated as F that defendant offered in evidence a telegram, dated April 30, 1929, from him to the Gilinsky Fruit Company, of Omaha, Neb., and one, bearing the same date, from him to Tom Walsh, of Cleveland, Ohio, both requesting that drafts drawn by defendant be not paid, but instead, that drafts drawn by the Louisiana Strawberry Auction, Inc., be paid. These telegrams were also excluded by the court.

It appears from the bill designated as G that defendant offered to show by himself that he sent the two telegrams, last mentioned. This evidence was also excluded by the court.

Defendant offered the deposit slip, dated April 29, 1929, which was the Monday following the Saturday night on which the alleged false representation was made and the berries purchased, for the purpose of showing that on making the deposit he had $8,469.72 in cash and in bills for collection in the Citizens' National Bank. He also desired to show, though this does not appear on the face of any of the bills, but only in a ledger sheet, taken from the books of the bank, and attached to the note of evidence, made part of the bill, designated as D, that on April 30, 1929, he had in cash in the Citizens' National Bank $2,544.52. He also desired to show, though this does not appear, except in the note of evidence, attached to one of the bills, that the money deposited in the bank on April 30, 1929, was the net proceeds of the cars of berries, one of which was car N. P. 1800, payment of his draft for which, on Gridley, Maxon & Co., was guaranteed by the Commerce

Trust & Savings Bank on the previous day, and that this money went to pay a prior draft on the Citizens' National Bank, drawn by him, in favor of the Louisiana Strawberry Auction, Inc., and hence that the auction company, to whom the alleged false representation was made, to obtain car N. P. 1800, suffered no loss by the representation, even if false. The telegrams sent by defendant to Walsh and to the Gilinsky Fruit Company, on April 30, 1929, stopping payment on drafts, drawn by him, and requesting instead that drafts of the Louisiana Strawberry Auction, Inc., be paid, were offered by defendant for the purpose of showing that, in making the alleged representation, he did not act with fraudulent intent.

The foregoing offerings were objected to, substantially upon the ground of irrelevancy. The court, in passing upon the objections, made the following statement and ruling: The state, according to its evidence, relies solely for a conviction on an alleged statement, made by defendant on April 27, 1929, at and before the time he purchased the berries, which statement is that he then and there had on deposit in the Citizens' National Bank of Hammond, La., sufficient money to pay for the berries, purchased by him that night. The court, after making this statement, ruled as follows: The sole issue in the case is as to whether the false pretense related to the presence of the money in the bank at the time of, or just prior to, the purchase of the car of berries, N. P. 1800, and that it is immaterial and irrelevant as to whether or not defendant later secured money and put it in the bank. The court therefore sustained the objections.

 The intent to defraud is an essential ingredient of the crime charged, and must be proved by the state beyond a reasonable doubt. In making proof of the intent to defraud, the widest latitude is allowed the pros-

ecution, and equal latitude is allowed the defendant in negativing that intent. Underhill on Crim. Ev. § 643, p. 642; 25 C. J. pp. 648 to 650. The fact that the evidence offered to negative the alleged fraudulent intent may have a self-serving tendency is not always sufficient to exclude it. Chamberlayne on Modern Law of Evidence, vol. 4, § 2659, p. 3634. However, the evidence must have some tendency to establish or negative the intent alleged, otherwise it is manifestly not relevant. The fact that, after the offense is completed by obtaining the property on the false representation, the property is restored to the owner, or the fact that the accused or another compensates the owner for it, does not purge the offense, for the gravamen of the crime does not depend upon ultimate loss to the victim. 11 R. C. L. False Pretenses, § 25, p. 843. Even when a person obtains money by a false pretense of an existing fact, he is guilty of the offense of obtaining it by false pretense, though he intends some day to repay it. 11 R. C. L. False Pretenses, § 16, p. 837.

The deposit slip, the telegrams, and the evidence offered to show that defendant sent the latter, offered by him, which constitute the evidence tendered, the rulings concerning which were excepted to, at best merely tended to show that he, after obtaining the berries by the alleged false pretense, made efforts to place in the Citizens' National Bank of Hammond, La., sufficient money with which to meet the draft he had given on the bank to the Louisiana Strawberry Auction, Inc. These acts were mere afteroccurrences, which had no tendency to negative the alleged intention to defraud at the time the false representation was made and the property obtained. They stood in the same light as the restoration of property obtained by a false pretense, or the repayment of money so obtained, after the commission of the offense.

As a matter of fact, it may be said the deposit slip in this instance does not, in the light of the surrounding facts, evidence a deposit subject to check on the day the deposit was made, and was not so treated by the bank. The deposit was not credited to defendant's checking account, but was obviously treated as a deposit for collection only. In fact, two of the items thereon, which were the same two, guaranteed later that day by the Commerce Trust & Savings Bank, on Gridley, Maxon & Co., were, as it were, withdrawn from the deposit slip, and on the next day, which was April 30th, the net proceeds thereof were deposited to defendant's credit in his checking account. The three remaining items on the deposit slip are the same items which on April 30th defendant telegraphed Watson and the Gilinsky Fruit Company not to pay, but to pay the drafts of the Louisiana Strawberry Auction, Inc., instead. Therefore the deposit slip shows nothing more, at best, than an effort made to provide funds with which to meet the draft given for the strawberries in question.

The ledger sheet from the books of the Citizens' National Bank, to which we have referred, was not offered in evidence, but was only attached to one of the bills as part of the evidence thereunder. However, had it been offered in evidence, defendant could not complain very well of its exclusion. While the ledger sheet shows that defendant deposited between April 19th and 27th, practically speaking, from $1,700 to $9,000 daily, usually over $5,000 each day, yet that the deposits were withdrawn by check almost as fast as they were made. This sheet shows that on April 26th defendant had a balance to his credit, at the close of business hours, of $100, that on April 27th he made no deposits, and that therefore, on the night of that day, when he made the representation, and for some

twenty-four hours prior thereto, he had on deposit only $100—a sum far below the amount necessary to pay for the berries. At this time, as appears from the instrument itself, attached to one of the bills, he had outstanding in favor of the Louisiana Strawberry Auction, Inc., a sight draft, on the Citizens' National Bank, for $2,042.40, which was dated April 25, 1929. The ledger sheet also shows that on the following legal day, Sunday intervening, he made no deposits, and that his balance was reduced at the close of business hours on that day to $15. On the following day, which was April 30th, the ledger sheet shows that he deposited $2,544.40, which seems to have been the net proceeds of the two drafts drawn on Gridley, Maxon & Co., one of which was for the berries in question, and on that day, after the payment of several checks, and the draft for $2,042.40, just mentioned, in favor of the Louisiana Strawberry Auction, Inc., given in another transaction two days before the purchase of the berries here involved, there remained to defendant's credit a balance of $16.37. We therefore think that, had the ledger sheet been offered in evidence and ruled out, defendant would have suffered no injury by the ruling, unless it be that it was a good defense that the proceeds of the berries, involved here, went to the vendor by the payment of the foregoing draft, given by defendant to the vendor, on the Citizens' National Bank, in a prior transaction.

The fact that the proceeds of the berries were paid to the vendor, in settlement of a prior draft, would not relieve defendant of the consequences of his act. The law did not impute the payment made, in settlement of the prior draft, to the payment of the later one to relieve defendant of his alleged fraudulent act. In fact, there is no room here for the imputation of payments. Besides, the law does not give its sanction to the obtaining of property by a false pretense and hold the person guiltless, because the proceeds of the property go, in the ordinary routine of commerce, to the payment of a prior liability, due by the person obtaining the property to the owner or vendor thereof.

Finding no error in the rulings complained of, the verdict and the sentence appealed from should be affirmed.

For these reasons the verdict and the sentence appealed from are affirmed.

O'NIELL, C. J., and ROGERS, J., dissent.

### On Rehearing.

ROGERS, J.

██ We have reached the conclusion, on a reconsideration of this case, that the record exhibits reversible error.

The trial judge, we think, ruled too narrowly in excluding the evidence offered by defendant tending to show that on April 30, 1929, he had on deposit in the Citizens' National Bank of Hammond the sum of $2,544.56, including the proceeds ($1,282.50) of the car of berries designated as N. P. 1800, and in holding that the sole issue in the case was whether the false pretense related to the presence of the money in the bank at the time of, or just prior to the purchase of the car of berries in question, and that it was immaterial and irrelevant as to whether or not defendant later secured money and put it in the bank. The judge's ruling was based on the fact that the state, by its evidence, was relying solely for defendant's conviction on an alleged false statement made by him on the night of April 27, 1929, at and before the time he purchased the car of strawberries, that he then and there had on deposit in the bank sufficient money to pay for the berries purchased by him that night. But the indict-

ment itself on which the defendant is being prosecuted charges that the alleged crime was committed on April 30, 1929, when it is set forth the defendant obtained by the alleged false pretense the car of strawberries N. P. 1800 from the Louisiana Strawberry Auction, Inc.

The defendant appears to have engaged in extensive business dealings, running into thousands of dollars, with the Louisiana Strawberry Auction, Inc., during the years 1928 and 1929. In the course of these business dealings, defendant purchased on Saturday night, April 27, 1929, the car of strawberries in question, which, however, was not delivered to defendant at that time. As a matter of fact, according to the record, this particular car of strawberries was in transit consigned to the shipper, the Louisiana Strawberry Auction, Inc., from Independence, La., to Mattoon, Ill. The day after defendant's purchase, namely, Sunday, April 28, 1929, the Louisiana Strawberry Auction, Inc., issued a diversion order to the American Railway Express Company, directing that company to send the car of strawberries to Gridley, Maxon & Co., at Chicago, Ill. The strawberries were delivered, presumably, to Gridley, Maxon & Co. for defendant's account on Tuesday, April 30, 1929, as set forth in the indictment herein. Hence defendant's offense, if he was guilty of any offense, was not committed on April 27, 1929, which was the basis of the ruling of the trial judge in excluding the evidence offered by defendant, but on April 30, 1929, as alleged in the indictment, when the Louisiana Strawberry Auction, Inc., actually parted with its property. The well-settled rule of law is that, in order to constitute the offense of obtaining property by false pretenses, the property must have been actually obtained either by the accused himself or by some one in his behalf, the offense being com-

plete when the property is obtained, and not until then. 25 C. J. pp. 604 and 605.

The crime of obtaining property by false pretenses may be defined to be the false representation of a past or existing fact, knowingly and intentionally made, orally, in writing, or by conduct, to deceive, and which does, in fact, deceive, and by means of which one person obtains property from another without compensation. Cf. C. J. 25, p. 589. But, since the crime consists not only in making false representations, but also obtaining property thereby, it follows that, although the pretense is false when made, yet, if it becomes true at the time when the prosecutor relies thereon and the property is obtained, the crime is not committed. 25 C. J. p. 590.

The purpose of the defendant in offering the excluded testimony was to show that he had deposited large sums of money in the bank on the 24th, 25th, 26th, and 29th of April, 1929, and that on April 30, 1929, the day on which the car of strawberries was delivered to Gridley, Maxon & Co., at Chicago, he actually had on deposit in the bank to his credit the sum of $2,544.56; that included in this amount was $1,282.56, which had been received from Gridley, Maxon & Co. in payment of his draft covering this particular car of strawberries; that of the amount of $2,-544.56 on deposit to his credit the Louisiana Strawberry Auction, Inc., on April 30, 1929, withdrew $2,042.40, on a check previously given that company by defendant on another transaction; that, although it was not on the check given to defendant auction company by defendant on April 27, 1929, that company actually received the proceeds of the berries contained in car N. P. 1800, on which this prosecution is based; that defendant had placed the money in the bank subject to the credit of the strawberry auction company, and, if that company had used the check giv-

en it for the purpose, which it should have done, instead of the previous check, the check would have been paid by the bank; that the fact that the strawberry auction company chose to withdraw the proceeds of the car of strawberries from the bank on a check other than the one given in payment thereof did not alter the fact that the company and not defendant received the money derived from the sale of the strawberries, and that the company actually did not part with its property without compensation.

We think the defendant should have been permitted to present the excluded evidence for the consideration of the jury. Subject to the general rules governing the admissibility of evidence, a defendant on trial for obtaining property by false pretenses may offer any evidence which legitimately tends to disprove any of the elements of the crime with which he is charged. 25 C. J. pp. 643, 644, 645.

For the reasons assigned, the conviction and sentence appealed from are annulled, and this case is remanded to the district court for a new trial.

OVERTON, J., dissents, adhering to original opinion.